IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUINCY MUTUAL FIRE INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>      v.<br><br>SCRIPTO USA,<br><br>            Defendant. | Civil Action No. 07-00551 (JBS)<br><br>MEMORANDUM OPINION |

**Simandle, District Judge:**

1.  This matter comes before the Court on the motion by
Defendant Scripto USA ("Scripto" or "Defendant") for summary
judgment [Docket Item 11] pursuant to Fed. R. Civ. P. 56(b).
Because Plaintiff has provided no evidence that Defendant's
allegedly defective product design was the cause of the damage in
this case, the Court must grant the motion for summary judgment.

2.  For purposes of this motion, the following facts are not
disputed.  On or about May 8, 2002, a fire occurred at the
Marlton, New Jersey home of Bernard Wille and Pamela Smith-Wille
causing property damage.  While there are no eyewitnesses to the
cause of the fire, the investigating police and fire responders
believe that the fire was started by Brendan Wille, the then
four-year-old son of the Willes, with a utility lighter
manufactured for and distributed by Scripto.  When questioned by
police, Brendan indicated that he obtained the lighter from the

countertop in his family's kitchen and used it to ignite his father's chair.  Both of Brendan's parents testified that they knew the lighter should be kept out of their son's reach and that he should not be allowed to play with it because he could start a fire or hurt himself if he did.

3.  A blue Scripto utility lighter was recovered from the front porch of the Wille home after the fire and Plaintiff Quincy Mutual Fire Insurance Company ("Quincy Mutual") has alleged that the lighter that was recovered was the one Brendan used to start the fire.  That lighter is a model GM9C, also known as an Aim 'n Flame II.

4.  To operate that lighter and generate a flame, an individual must exert sufficient pressure to roll forward a small wheel located on top of the lighter and simultaneously depress a trigger located on the underside of the lighter.  Once the flame is generated it will extinguish when the trigger is released. This model lighter was tested on behalf of Scripto in accordance with the test protocol set forth in 16 C.F.R. Part 1212 and successfully resisted operation by 91% of the child test panel. In December 2000, the federal Consumer Product Safety Commission accepted these testing results and authorized Scripto to import and sell the lighter as a child resistant lighter.  The packaging for the lighter included warnings that the contents were "extremely flammable" that it should be "kept out of the reach of

2

children" and that "the child resistant feature of this lighter is no substitute for proper adult supervision."

5. Plaintiff alleges that the Scripto lighter contained a design defect because the flame did not extinguish when a person released the rolling wheel, only when a person released the trigger. In other words, Plaintiff alleges that the lighter should have required a person to turn the wheel and hold the trigger not only to ignite the flame, but also to keep it lit. Plaintiff bases this argument on the report of its proffered expert, Richard Hallowell, Jr., who concluded the lighter is defective simply because Brendan was able to start a fire with it.

6. Mr. Hallowell has no formal engineering education beyond a basic undergraduate degree. Prior to becoming a litigation consultant, Mr. Hallowell's engineering experience consisted of designing and installing HVAC and fire protection systems in buildings. He has never designed any kind of lighter, nor any other product. He has never been a member of any standards-setting organization, other than the Building Officials Conference of America. Hallowell has never authored any standards or codes, nor has ever published in any peer-reviewed journals regarding human factors, warning effectiveness, or child-resistant design. He has no training in psychology, children's behavior, language comprehension, or child-resistant

design.  When asked at his deposition to state the fields in
which he would consider himself to be an expert, Hallowell
identified heating, air conditioning, plumbing, fire protection,
and the mechanical components of related machinery.  He
specifically denied expertise in warnings, human factors, and
human factors with regard to children.

    7.  Mr. Hallowell knows virtually no factual information
about the fire at the Wille home that gave rise to this case.
He knows nothing about the fire or its potential causes.  His
first information about this case came in the form of a letter
from Plaintiff's counsel that set forth the defect theory counsel
wanted him to pursue.  "You and I have discussed on several
occasions, a potential cause of action regarding the safety
mechanisms used for grill lighters.  The issue is, should the
child safety mechanism used in these type of lighters prevent the
flow of fuel to the end of the lighter, as opposed to just
preventing the igniter.  In the typical case, a rolling thumb
button must be activated before the lighter trigger is pulled, in
order to allow the igniter to ignite, however, once [the lighter
is] lit, the rolling thumb button can be released and the light
will continue to burn as long as the trigger is depressed.  We
have several of these type cases now in our office, and we would
like to develop a cause of action based in products liability for
this defective design."

8.  Mr. Hallowell does not know how Brendan obtained the lighter or where in the Wille home the fire started.  He does not know where Brendan's parents were at the time, whether Brendan was supervised, or if not, for how long Brendan was unsupervised. Hallowell does not know how long Brendan had the lighter in his possession before the fire started, how long it took Brendan to ignite the lighter, or how many times Brendan tried to do so before he was successful.  Hallowell does not know if Brendan used one or two hands to operate the lighter or for how long he was able to maintain a flame.  He does not know if Brendan operated the lighter accidentally or purposefully.

9.  Importantly, Hallowell does not know for how long Brendan kept the wheel on top of the lighter rolled forward or if Brendan kept the wheel rolled forward the entire time that he kept the trigger depressed.  Hallowell does not know for how long the average four year-old child would be capable of maintaining the wheel rolled forward or the trigger depressed.  There is no other evidence about how Brendan operated the lighter or to suggest that if the lighter had a second cut-off switch in the wheel that would have prevented the property damage in this case.

10.  Hallowell examined the lighter and some packaging for no more than ten minutes at the office of Plaintiff's counsel. He is able to describe the two-step process a person must use to operate the lighter, but does not know how the existing fuel cut-

off mechanism operates inside the lighter.  He has not constructed a prototype of his proposed alternative design to determine feasibility and cannot explain how he would design the second fuel cut-off or how it would work.  He admitted that the dimensions of the lighter's handle would have to grow to accommodate his alternative design, but does not know by how much or in what manner, or if the handle would still be usable or would be more likely to be dropped.  In short, he does not know how to create his alternative design and does not know if it would pose any new or increased hazards to users.  Hallowell was unable to identify any other utility lighters on the market that employ his proposed secondary fuel cut-off.

    11.  Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The

threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

12.   Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

13.

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

14.  New Jersey law of products liability provides the rule of decision in this case.  Under New Jersey law,

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.  "Under the Products Liability Act, as under common law, it is plaintiff's burden to prove 'that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose . . . .' N.J.S.A. 2A:58C-2." <u>Fabian v. Minster Mach. Co., Inc.</u>, 258 N.J. Super. 261, 273 (App. Div. 1992).

15.  As the New Jersey Supreme Court has said,

> A prerequisite of any recovery under strict tort liability is the existence of a defective condition. To succeed under a strict liability design-defect theory, a plaintiff must prove "that the product was defective, that the defect existed when the product left the defendant's control, and that the defect caused injury to a reasonably foreseeable user." <u>Feldman v. Lederle Labs.</u>, 97 N.J. 429, 449, 479 A.2d 374 (1984). An inference of defectiveness may not be drawn from the mere fact that someone was injured.

<u>Zaza v. Marquess & Nell</u>, 144 N.J. 34, 49 (1996) (citations

omitted).

16.  Although this Court must view the facts in the light
most favorable to Plaintiff, Plaintiff cannot shirk its duty to
present or point to evidence supportive of claims on which it has
the burden of proof.  Plaintiff has come forward with no evidence
of two essential elements of its claim:  (1) that a defect
existed and (2) that the defect caused the injury.  Because "a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial," Celotex Corp. v. Catrett, 477 U.S. at 322-23, the
Court must grant summary judgment for Defendant, pursuant to Rule
56(c), as explained below.

17.  At trial Plaintiff will have to prove a defect exists,
which requires proof that there was a reasonable alternative
design available and that the omission of that alternative
renders the product unreasonably safe.  See N.J. Stat. Ann. §
2A:58C-3.[1]  There is no evidence in this case of an alternative

---

[1]
              a. In any product liability action against a
        manufacturer or seller for harm allegedly
        caused by a product that was designed in a
        defective manner, the manufacturer or seller
        shall not be liable if:

              (1) At the time the product left the control
        of the manufacturer, there was not a practical
        and technically feasible alternative design
        that would have prevented the harm without
        substantially   impairing   the   reasonably
        anticipated  or  intended  function  of  the
        product; or

design, as Plaintiff has not actually designed the alternative,
has not provided evidence that one exists, that such an
alternative lighter would still work for its intended purposes,
or that it would be more safe than Defendant's current design.
The Court cannot send the case to a jury absent any evidence that
a feasible alternative design exists, given that the jury has no
evidence with which it must perform the required risk-utility
analysis to determine whether the lack of the second cut off
switch is a "defect".

>    18.  In determining whether the lighter was defective,
>
>         a jury must determine the risks and
>         alternatives that should have been known to a

---

>         (2) The characteristics of the product are
>         known to the ordinary consumer or user, and
>         the harm was caused by an unsafe aspect of the
>         product that is an inherent characteristic of
>         the product and that would be recognized by
>         the ordinary person who uses or consumes the
>         product with the ordinary knowledge common to
>         the class of persons for whom the product is
>         intended, except that this paragraph shall not
>         apply to industrial machinery or other
>         equipment used in the workplace and it is not
>         intended to apply to dangers posed by products
>         such as machinery or equipment that can
>         feasibly be eliminated without impairing the
>         usefulness of the product; or
>
>         (3) The harm was caused by an unavoidably
>         unsafe aspect of the product and the product
>         was accompanied by an adequate warning or
>         instruction as defined in section 4 of this
>         act.

N.J. Stat. Ann. § 2A:58C-3.

> reasonable manufacturer, and then assess whether the manufacturer discharged its duty to provide a "reasonably fit, suitable and safe" vehicle. To do this, the jury employs a risk-utility analysis. <u>Jurado v. Western Gear Works</u>, [131 N.J. 375,] 385 [(1992)]. Although there are seven listed factors in the classical statement of the risk-utility analysis, <u>see</u> <u>Cepeda v. Cumberland Eng'g Co.</u>, 76 N.J. 152, 174, 386 A.2d 816 (1978) and its progeny, the prevalent view is that . . . the issue upon which most claims will turn is the proof by plaintiff of a "reasonable alternative design … the omission … [of which] renders the product not reasonably safe."

<u>Green v. General Motors Corp.</u>, 310 N.J. Super. 507, 517-18 (App. Div. 1998). <u>See</u> <u>also</u> <u>Lewis v. Am. Cyanamid Co.</u>, 155 N.J. 544, 560 (1998) ("To succeed on his design-defect claim, plaintiff was required to prove that a practical and feasible alternative design existed that would have reduced or prevented his harm.").

19. Even assuming that Plaintiff had provided evidence from which a jury could reasonably find that a defect exists in this product, the Court would still be compelled to grant the motion for summary judgment because there is no evidence from which a jury can find that the alleged defect – the lack of a second cut-off switch in the wheel – caused the injury in this case. "An inference of defectiveness may not be drawn from the mere fact that someone was injured." <u>Zaza</u>, 144 N.J. at 49. A jury could impose liability only if it found that defendant was responsible for a defective condition that was the proximate cause of the injury. <u>Id.</u>

20.   Absent any evidence of defect or causation, the Court must grant judgment as a matter of law at this stage.   Proving a defect in the product is a necessary component of Plaintiff's prima facie case, as is proving causation.   <u>Id.</u>   Because the Court must grant the motion for summary judgment on those grounds, there is no need to address the other potential grounds for relief raised in Defendant's motion.

**August 28, 2008**                       <u>s/ Jerome B. Simandle</u>
Date                                         JEROME B. SIMANDLE
                                             U.S. District Judge

12